**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARTWON ROWE-WILLIAMS, | |
| **Plaintiff,** | **Case No. 1:22-cv-04934** |
| **vs.** | |
| **BNSF RAILWAY COMPANY**, | **Honorable Virginia M. Kendall** |
| **Defendant.** | |

**DEFENDANT BNSF RAILWAY COMPANY'S REPLY BRIEF IN FURTHER SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT
<u>UNDER RULE 12(b)(6) AND MEMORANDUM IN SUPPORT</u>**

Nothing in Plaintiff Martwon Rowe-Williams' opposition (<u>Doc. 30</u>) changes the outcome of his claims at issue—he has not sufficiently pleaded facts plausibly suggesting his entitlement to relief under the ADA for either his disability discrimination claim for failure to hire (Count I) or his retaliation claim (Count II), the latter of which has also not been administratively exhausted. Additionally, Plaintiff offered no basis to support a leave to amend, yet again, his flawed claims. Thus, the Court should dismiss Plaintiff's claims with prejudice.

**ARGUMENT**

I. **Plaintiff's disability discrimination claim based on failure to hire (Count I) should be dismissed because regardless of Plaintiff's opposition, Plaintiff has not adequately alleged that he is "disabled" under the ADA.**

Plaintiff's opposition contends that BNSF "incorrectly put[ ] forth a summary judgment argument at the 12(b)(6) stage," that "the determination of whether a substantial limitation of a major life activity exists is a question of fact." <u>Doc. 30, p. 3</u>. First, BNSF is not asking the Court to make a fact-based inquiry to determine whether Plaintiff is disabled within the meaning of the ADA. BNSF is only asking the Court to determine whether Plaintiff has even adequately alleged he is disabled within the meaning of the ADA, which BNSF argues he has not. Indeed, Plaintiff's

opposition does not rebut the well-established precedent set by this Court and in this Circuit regarding the pleading requirements for advancing a claim under the ADA.

Second, Plaintiff's argument relies on _Homeyer v. Stanley Tulchin Associates, Inc._, 91 F.3d 959 (7th Cir. 1996), which involves facts that are distinguishable from Plaintiff's case. Homeyer's complaint alleged that two specifically named medical conditions substantially impaired two specific major life activities, those being her ability to breathe and, when the condition is aggravated, her ability to work. _Id._ at 961. In comparison, Plaintiff's Complaint alleges that he is a diabetic and that being diabetic is a physical impairment that substantially limits major life activities, for which he monitors his glucose levels and eating habits, including "while on the job." Doc. 13, ¶ 13 and 17. Plaintiff contends that his Complaint "clearly alleges to [_sic_] two major life activities are substantially limited, eating and Plaintiff's endocrine system." Doc. 30, p. 3. However, his Complaint does not "clearly" allege anything other than that he is diabetic and that being diabetic is a substantially limiting physical impairment. He asserts that his "diabetes required him to monitor his glucose levels and eating habits while on the job" (Doc. 13, ¶ 17), but a leap of imagination is required to interpret his assertion as meaning that he is substantially limited in the major life activities of eating and the operation of his body's endocrine function. While the Court must accept all well-pleaded facts as true in resolving a Rule 12(b)(6) motion (_Ashcroft v. Iqbal_, 556 U.S. 662, 679 (2009)), the Court need not "strain to find inferences favorable to the plaintiff [ ] which are not apparent on the face of the complaint." _Coates v. Illinois State Bd. of Ed._, 559 F.2d 445, 447 (7th Cir. 1977).

Third, Plaintiff's opposition does not acknowledge, much less address, BNSF's argument that Plaintiff has also failed to adequately allege he is disabled under the ADA's "record of" theory. In short, Plaintiff alleges in his Complaint that he "has a record of disability being treated on an

ongoing basis." Doc. 13, ¶ 15. Claiming he is disabled under this theory requires pleading not just that he has "a record of disability being treated" but that he has a record of having been substantially limited in a major life activity. 29 CFR § 1630.2(k). That Plaintiff has pleaded only that he has a record of treatment for a claimed disability is insufficient.

Finally, Plaintiff's opposition also does not address BNSF's argument that in the absence of adequately alleging he has a "disability" as defined by the ADA, a claim that plainly alleges BNSF failed to hire him because of his disability equally fails.

In sum, Plaintiff's claim for disability discrimination based on failure to hire must be dismissed and as discussed *infra*, leave to amend (again) is inappropriate because Plaintiff has offered no basis or even a suggestion as to how he might cure this flawed claim.

## II. Plaintiff's retaliation claim (Count II) should be dismissed because Plaintiff has failed to administratively exhaust and has not sufficiently pleaded his retaliation claim.

### a. Plaintiff did not administratively exhaust his retaliation claim because the allegations set out in his EEOC charge are not reasonably related to his Complaint and the two do not rely on the same alleged conduct or implicate the same individuals.

In regard to Plaintiff's failure to exhaust administrative remedies, which is grounds for dismissal (*Fort Bend Cnty. v.* Davis, 139 S. Ct. 1843, 1846, 1851-52, 204 L.Ed.2d 116, 127-128 (2019)), Plaintiff's opposition discusses a standard established by much older precedent for determining the proper scope of a judicial proceeding following an EEOC charge, but appears to settle on the "test of *Jenkins*" (Doc. 30, p. 4-5), which is actually the "guiding principle [ ] set forth" in the Fifth Circuit case of *Danner v. Phillips Petroleum Co.*, 447 F.2ds 159, 162 (5th Cir. 1971): "The correct rule to follow in construing EEOC charges for purposes of delineating the proper scope of a subsequent judicial inquiry is that "the complaint in the civil action [ ] may properly encompass any [ ] discrimination like or reasonably related to the allegations of the charge and growing out of such allegations."" The *Jenkins* court accepted the *Danner* standard, but not

its application of the standard, which is why *Jenkins* and therefore *Danner* are distinguishable from Plaintiff's case. Jenkins was a pro se plaintiff who sued for race discrimination based on failure to promote. Her complaint relied on an EEOC charge on which she had checked the box for discrimination based on race or color and alleged that her supervisor denied her a promotion based on her Afro hairstyle, which the court found to be "racial discrimination [that] could hardly be more explicit." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976). The same is not true for Plaintiff's Complaint.

Plaintiff contends that he administratively exhausted his retaliation claim because the allegations in his Complaint "clearly grow out of and are clearly related to Plaintiff's EEOC charge." Doc. 30, p. 5. He specifically argues that a claim regarding his "complaints to a BNSF medical professional about the hiring process naturally grows [*sic*] out of [BNSF's] constant need for testing and [ ] constant refusal to hire based on Plaintiff's disability." *Id. at 6.*   It requires another leap of imagination to see what Plaintiff sees. The fact remains that the retaliation claim set out in Plaintiff's Complaint alleges that he engaged in protected activity "when he complained to [BNSF's] medical professional," whereas his EEOC charge does not allege that he complained at all, to anyone, about anything. Doc. 13, ¶ 23, *compare with* Doc. 13-1. Because Plaintiff's Complaint and his EEOC charge do not "describe the same conduct and implicate the same individuals" his retaliation claim fails under the more current failure-to-exhaust standard set out in *Delgado. Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 926 (7th Cir. 2018). Plaintiff may have checked the box for retaliation on his EEOC charge form and he alleges in his charge that BNSF retaliated against him, but his charge otherwise contains no facts that could reasonably alert an EEOC investigator to the possibility that his retaliation claim hinged on the same conduct (an alleged complaint rather than, for example, participating in an investigation of an EEOC charge

filed by a coworker) and implicated the same individuals (a BNSF medical professional). *See Shah v. Walmart Stores, Inc.*, No. 3:21-CV-50277, 2022 WL 1746850, at *3 (N.D. Ill. May 31, 2022) (plaintiff claimed failure to hire, but EEOC charge "does not come close to mentioning" failure to hire).

Plaintiff also contends that he administratively exhausted his retaliation claim because he stated in his EEOC charge that he disclosed his disability to BNSF, that "due to [his] disability," BNSF required him to obtain medical tests before he could be hired, and BNSF then retaliated against him by not hiring him for the position. Doc. 13-1. Plaintiff argues that these statements in his charge are "natural starting points" for the retaliation claim set out in his Complaint, respective to his allegation that BNSF retaliated against him by failing to engage in the interactive process and by failing to provide Plaintiff with any necessary accommodations. Doc. 30, ¶ 36. These statements are far from "natural starting points" because they overlook, which Plaintiff does not acknowledge (or dispute, for that matter), that the act of disclosing a disability is not, by itself, a protected activity under the ADA. *See* 42 USC § 12203(a); *see also Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008). In fact, the ADA also permits employers to use information disclosed during a post-offer, pre-employment medical qualification process and, as part of the post-offer hiring process, require job-related medical testing, including medically related follow up testing based on information previously obtained from the individual. *See* 42 USC § 12112(d)(2) – (3).

> **b. Plaintiff's opposition does not overcome the fact he has not sufficiently pleaded a plausible ADA retaliation claim.**

Finally, Plaintiff's opposition changes nothing about the fact that in addition to failing to properly exhaust his retaliation claim, he has not sufficiently pleaded this claim. Plaintiff does not dispute that to state a plausible ADA retaliation claim, he must assert that he engaged in protected

activity under the ADA and that he suffered an adverse employment action as a result. <u>Mobley</u>, <u>531 F.3d at 549</u>. As discussed, Plaintiff's Complaint asserts that he engaged in protected activity when he complained to a BNSF medical professional about why he was not being hired. <u>Doc. 13, ¶¶ 20, 23</u>. Even adding the context of the complete paragraphs set out in his Complaint like he suggests in his opposition (<u>Doc. 30, p. 7</u>), the Court still must go beyond the face of the Complaint to infer what Plaintiff meant, to infer a connection that does not exist between his personal caveats and alleged facts. More specifically, the added context does not allege more facts regarding the substance of his complaint but instead alleges how Plaintiff felt and what may have motivated him to complain generally – *e.g.*, that the hiring process was delayed and that he interpreted the results of his medical testing differently than BNSF's medical professionals. Accordingly, to read his Complaint as asserting anything other than that he complained to a BNSF medical professional about why he was not being hired requires imposing an unstated allegation that he actually or also complained about a form of discrimination protected by the ADA or about exercising a right provided by the ADA. That is not the case, at least according to the Complaint, and the Court is not required to find inferences favorable to Plaintiff that are not apparent on the face of his Complaint. <u>Coates</u>, <u>559 F.2d at 447</u>.

Plaintiff provides no supporting case law or other legal authority for his argument that he sufficiently pleaded his retaliation claim. On top of that, in response to BNSF's extended argument that the retaliation claim still fails even if the claim relied on (either independently or in addition to) his allegations that BNSF failed to engage in the interactive process and failed to provide him with necessary accommodations, Plaintiff's counter argument, or rather counter sentence, is equivalent to saying he disagrees with BNSF's position. Plaintiff does not address the fact that this Court and other courts within the Seventh Circuit have consistently dismissed ADA retaliation

claims that are based on the same alleged bad conduct as a failure to accommodate claim. *See* Doc. 20, p. 9-10.

In sum, Plaintiff's retaliation claim must be dismissed and as discussed below, leave to amend (again) is improper in the absence of any basis or suggestion as to how Plaintiff might cure this flawed claim.

**III.    Plaintiff has not offered any basis to support a leave to amend his Complaint.**

Plaintiff has already amended his Complaint "as a matter of course" under Rule 15(a)(1). At this point Rule 15(a)(2) applies: Plaintiff may only amend his Complaint with BNSF's written consent or the court's leave. BNSF does not consent to allowing Plaintiff to amend his Complaint a second time, which means Plaintiff may only amend with the court's leave.

BNSF acknowledges the generally liberal approach to granting leave to amend under Rule 15(a)(2). *See, e.g., Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. And Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). However, the Seventh Circuit has made clear that "[n]othing in Rule 15 suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018).

Plaintiff has neither filed a Rule 15 motion for leave to amend nor attached a proposed Second Amended Complaint to his opposition or brief in support of opposition. Plaintiff requested in the body of both pleadings that the Court deny BNSF's motion "or in the alternative allow Plaintiff to amend his Complaint." Doc. 29, p. 1; Doc. 30, p. 1-2, p. 8. However, Plaintiff did not suggest, or even imply, how he might actually amend his complaint a second time to cure the defects at issue. In fact, respective to Count I (only), Plaintiff stated in his opposition brief that "if this Court determines that Plaintiff has not sufficiently pled [*sic*] that he has a disability under the ADA, Plaintiff requests this Court allow him to amend his Pleading" (Doc. 30, p. 4). This is an

8759882v2

inappropriate contingent request that suggests Plaintiff plans on waiting to see if the Court will rule against him on BNSF's motion to dismiss and then either expects leave to amend or will later seek leave to amend, a tactic that courts in this Circuit have treated unfavorably. *See Swoope v. Gary Cmty. Sch. Corp.*, No. 2:10 CV 423, 2012 WL 523710, at *3 (N.D. Ind. Feb. 15, 2012) (citing *Park v. Indiana Univ. Sch. of Dentistry*, No. 1:10-CV-1408-WTL-WGH, 2011 WL 1792717, at *2 (S.D. Ind. May 9, 2011) (plaintiff waited until the parties fully briefed defendant's motion to dismiss and the Court decided the motion against her, to which the Court stated "[plaintiff] does not have the right to sit back, let the Court explain the shortcomings in her Complaint, and then take a mulligan and amend her Complaint.")).

District courts in this Circuit "may deny leave to amend [ ] where there is a good reason to do so," such as "futility, undue delay, prejudice, or bad faith." *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 946 (7th Cir. 2020). In this case, if the Court allows Plaintiff leave to amend based on the plain request in his opposition and without Plaintiff first specifying proposed amendments, BNSF will inherently be unfairly prejudiced. The potential for a repeated failure to cure deficiencies by amendment is also ripe given that Plaintiff already amended his Complaint once as a matter of course and defects still exist.

In sum, Plaintiff has not provided any basis to support a leave to amend his Complaint a second time and BNSF asks the Court to deny the generic and unsupported request set out as an alternative in Plaintiff's opposition.

## CONCLUSION

WHEREFORE, for the foregoing reasons, and in addition to those set out in BNSF's Motion to Dismiss Plaintiff's First Amended Complaint, BNSF respectfully requests that the Court dismiss Plaintiff's First Amended Complaint in its entirety because Plaintiff has failed to state a

claim upon which relief can be granted for both claims asserted and he has also failed to exhaust administrative remedies for the retaliation claim asserted. Additionally, and for the reasons set forth herein, BNSF respectfully requests that the Court deny Plaintiff leave to amend for his failure to properly request such leave and that his request, as is and if allowed, will unfairly prejudice BNSF.

Respectfully submitted this 31st day of January, 2023.

Respectfully submitted,

Constancy, Brooks, Smith & Prophete, LLP

*/s/ Heather M. Miller*
Heather M. Miller (MO #70249)
Admitted *Pro Hac Vice*
1201 Walnut Street, Suite 2350
Kansas City, MO 64106
Telephone: 816-472-6400
Facsimile: 816-329-5954
hmiller@constangy.com

Laura A. Balson (#6291377)
300 S. Wacker Drive Ste. 1050
Chicago, IL 60606
Telephone: 773-661-4710
lbalson@constangy.com

Attorneys for Defendant BNSF Railway Company

8759882v2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of January, 2023, I electronically transmitted the foregoing document with the Clerk of Court using the ECF System which will send notification of such filing to the following:

> Nathan C. Volheim
> Eric D. Coleman
> Alexander J. Taylor
> SULAIMAN LAW GROUP LTD.
> 2500 S. Highland Avenue, Suite 200
> Lombard, Illinois 60148
> Phone (630) 568-3056
> Fax (630) 575 - 8188
> nvolheim@sulaimanlaw.com
> ecoleman@sulaimanlaw.com
> ataylor@sulaimanlaw.com

> ATTORNEY FOR PLAINTIFF

*/s/ Heather M. Miller*
An Attorney for Defendant

-10-